UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ELIZABETH H. SEWELL, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ]  4:09-CV-645-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

Plaintiff, Elizabeth H. Sewell, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI").  Ms. Sewell timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Sewell was forty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, and in addition to a high school education, she attended two years of college. (Tr. at 45, 60, 193-94.) Her past work experience includes employment as a wholesale car sales delivery and pick-up driver and a self-employed sitter. *Id.* at 57-58, 195. Ms. Sewell claims that she became disabled on July 21, 2005, due to arthritis of the spine and body, scoliosis, migraine headaches, depression, and irritable bowel syndrome ("IBS")[1]. *Id.* at 56, 181-87, 195-99.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical

---

[1] Despite her list of complaints, Plaintiff herself states that she "alleges disability primarily due to chronic moderately severe back pain" (Doc. 8 at 6) and the arguments in her brief focus solely on her back pain. *Id.* at 6-9. Therefore, this Court will limit its discussion to Plaintiff's complaints of severe back pain.

and mental impairments combined. 20 C.F.R. § 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*.

If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ determined that Ms. Sewell had not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 16.) According to the ALJ, Claimant's arthritis, degenerative disc disease of the lumbar spine, migraine headaches, and IBS are considered "severe" based on the requirements set forth in the regulations. *Id.* However, he found that these impairments neither met nor medically equaled any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id.* at 17. The ALJ determined that she had the following residual functional capacity:

> to perform a substantial range of light work as defined in 20 CFR 416.967(b). The claimant is capable of lifting and/or carrying objects weighing up to 10 pounds on a frequent basis and up to 20

> pounds on an occasional basis; standing up to 5 hours in an eight hour workday, walking up to 4 hours in an eight hour workday and sitting (with normal breaks) for a total of up to six hours per eight-hour work day.

*Id*.

The ALJ concluded that Ms. Sewell was unable to perform any past relevant work. *Id*. at 19. However, given Plaintiff's age, education, work experience and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id*. at 20. Accordingly, the ALJ entered a finding that Claimant "has not been under a disability, as defined in the Social Security Act, since July 21, 2005." *Id*.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court

approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards

is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Ms. Sewell alleges that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded because she believes the ALJ "did not properly evaluate the credibility of the Plaintiff's complaints of pain consistent with the Eleventh Circuit Pain Standard." (Doc. 8 at 4.)

To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ is permitted to discredit Claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). In *Dyer*, the Eleventh Circuit held that the ALJ properly applied the *Holt* standard when he considered the claimant's daily activities, frequency of his symptoms, and the types and dosages of his medications, to conclude that the claimant's subjective complaints were inconsistent with the medical record. *Id.* at 1212. "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [this

Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In the instant case, while the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms", he further determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. at 18.)

In forming his conclusion, the ALJ gave "great weight" to the opinion of Dr. Henry M. Born, who Plaintiff saw on November 6, 2007, for a consultative examination. (Tr. at 18-19.) As noted by the ALJ, Dr. Born found that Plaintiff was suffering from chronic back pain, chronic pain syndrome, possible early spondylothesis and spinal stenosis, hypertension, chronic anxiety, and recurrent migraines. *Id.* at 18, 170. He further found that while Plaintiff had been getting epidural injections for quite a while[2], her symptoms "seem to be getting worse." *Id.* at 19, 170. Dr. Born noted

---

[2]*See infra* pp. 12-13 for discussion of Plaintiff's injections.

Plaintiff was taking Morphine and Roxicodone in addition to being referred to a pain clinic. *Id.*

Although Dr. Born concluded that Plaintiff's symptoms would likely persist, he noted that "[i]nterestingly, she is able to ambulate very well despite this pain." (Tr. at 19, 170.) Dr. Borne found Plaintiff had a "normal range of motion of the cervical spine", a "fairly good range of motion" of the lumbosacral spine, her gait is "remarkably good", Plaintiff can walk up and down the hall at a good pace, with no apparent discomfort, and Plaintiff can walk on her toes and heels "very well", as well as squat and arise "pretty well." *Id.* at 169-70. Dr. Borne also completed a Medical Source Statement which the ALJ relied upon in determining Plaintiff's RFC (*see supra* at p. 4 for Plaintiff's RFC). *Id.* at 19, 174-76. The ALJ stated that he gave Dr. Born's findings "great weight" because Dr. Born's report "included a physical examination, range of motion studies and observations" and the ALJ found Dr. Born's examination to be "thorough and consistent with the evidence of record." (Tr. at 19.)

In addition to the opinion of Dr. Born, the ALJ cites very briefly to the records of Dr. Franklin Hood and Dr. Bradly Goodman in determining Plaintiff was seen "intermittently" and treated "conservatively". (Tr. at 18, 72-123, 150-57.) The ALJ notes that on October 29, 2001, Dr. Hood assessed Plaintiff as having acute lumbar strain and dysfunction at L5 on the left and she was prescribed Soma, Neurontin, and Vicoprofen. *Id*. at 18, 98. Then, on July 20, 2002, Plaintiff returned with complaints of neck and back pain and informed Dr. Hood that she was receiving injections from a doctor in Birmingham. Dr. Hood prescribed Bextra, Vicoprofen, and Flextra. *Id*. Plaintiff was seen again due to complaints of back pain on March 31, 2003, at which time she was diagnosed with degenerative joint disease and degenerative disc disease. She was prescribed Lortab, Flextra, and a 12-day pack of Prednisone.[3] *Id*. at 18, 88-89.

In referencing Dr. Goodman's records, the ALJ notes that on March 5, 2007, Dr. Goodman reported that he had been giving Plaintiff epidural

---

[3] Though not referenced by the ALJ, Plaintiff also complained to Dr. Hood of back pain on February 7, 2005, at which time Dr. Hood prescribed Vicodin. (Tr. at 81-82.) Then, on June 29, 2005, Dr. Hood diagnosed Plaintiff with chronic back pain, although his notes do not indicate that he prescribed any medication for Plaintiff on that occasion. *Id*. at 78-79.

blocks approximately once a year for many years, and they had helped in the past. (Tr. at 18, 154-55.) Dr. Goodman stated that the blocks were not lasting as long as they had in the past, and that Plaintiff received one on January 12, 2007, but received only short-term relief. *Id*. Although he noted Plaintiff's last MRI, which revealed minimal disc bulges at L4-L5 and L5-S1, was on December 15, 1998, he determined that Plaintiff had "pretty obvious spondylolisthesis at L4-L5. *Id*. Finally, the ALJ notes that a May 21, 2007 MRI showed bilateral grade 1 spondylolisthesis at L4-L5, greater on the left than on the right, and moderate central stenosis. Plaintiff underwent another injection on May 23, 2007. *Id*. at 18, 150-51.

Although the ALJ concluded Plaintiff sought treatment for back complaints only "intermittently" and was treated "conservatively with non steroid anti-inflammatory drugs and injections" (Tr. at 18), there are quite clearly gaps and inconsistencies with Dr. Goodman's records. Dr. Goodman's medical records cover a period of time between January 8, 1999 through November 11, 1999, and January 12, 2007 through May 23, 2007. *Id*. at 71-78, 149-157. However, as noted above, on March 5, 2007, Dr.

Goodman reported that he had been giving Plaintiff epidural blocks approximately once a year for many years, and they had helped in the past. (Tr. at 18, 154-55.) Not only is there no medical evidence in the record of Dr. Goodman giving Plaintiff epidural blocks between November 1999 and January 2007, Dr. Goodman noted on the same occasion that Plaintiff had "really not been seen in the clinic since 1999." *Id.* at 154.  Further, on September 21, 2006, Dr. Goodman wrote what is essentially a doctor's excuse, stating, "Due to ongoing chronic low back pain patient is unable to attend the job training/job search program" (Tr. at 145), yet there is nothing in the record to indicate that Plaintiff was examined by Dr. Goodman on that date, or why Dr. Goodman came to that conclusion.

Although it is true that it is the plaintiff who bears the burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments[4],  20 C.F.R. §404.1512(e) provides as follows:

---

[4] *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d at 1278; 42 U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").

> [w]hen the evidence . . . from your treating physician . . . or other medical source is inadequate for us to determine whether you are disabled, we . . . will first recontact your treating physician . . . or other medical source to determine whether the additional information . . . is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.

It is the opinion of this Court that the ALJ should have sought clarification from Dr. Goodman given that the records originally obtained are clearly not complete. Had the full records been available, they may have shown that treatment was not intermittent, and, if an epidural block was done once a year as claimed by Dr. Goodman in 2007, treatment may not have been as conservative as described by the ALJ. Therefore, this Court is remanding the present case to the ALJ to further develop the

record, specifically to obtain the complete medical records of Dr. Goodman with regard to Plaintiff.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Ms. Sewell's arguments, the Court finds that the ALJ failed to fully develop the record.  For the foregoing reasons, the ALJ's denial of benefits is **vacated**, and the case is **remanded** to the ALJ for further proceedings consistent with this opinion, namely to obtain the full records of Dr. Bradly Goodman and to issue an opinion which takes these records into account.  A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this <u>19th</u> day of <u>July 2010</u>.

*[signature]*

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671
